UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHRISTA L. PHILLIPS,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant

                               /

Case No. 1:16-CV-147

HON. GORDON J. QUIST

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Christa Phillips seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty years of age on the date of the ALJ's decision (PageID.48, 106.) She completed two years of college, and was previously employed as a secretary. (PageID.232.) Plaintiff filed for benefits on April 15, 2014, alleging that she had been disabled since September 5, 2013, due to an intramedullary spinal tumor, S/P C2-4 laminectomy, and resection of the tumor.[1] (PageID.106, 174–108.) Plaintiff's application was denied on July 11, 2014, after which time she sought a hearing before an ALJ. (PageID.118–124.) On August 27, 2015, Plaintiff appeared with her counsel before ALJ Davida Isaacs during which time both Plaintiff and a vocational expert (VE) testified. (PageID.72–104.) On September 23, 2015, the ALJ issued a partially favorable decision,

---

[1] It appears Plaintiff's SSI application was inadvertently withheld until September 29, 2014. (PageID.181–203.) The ALJ's decision discusses both applications.

finding Plaintiff was disabled from her alleged onset date through September 30, 2014, but not thereafter. (PageID.48–71.) On December 15, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.33–38.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 5, 2013. (PageID.56.) At step two, the ALJ found that at all times relevant to the decision, Plaintiff suffered from the following severe impairments: degenerative disc disease, status-post intramedullary spinal tumor resection and laminectomy, optic meningioma, and obesity. (PageID.56.) At step three, the ALJ found that at all relevant times, Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.56.)

### 1. Plaintiff's Condition Prior to October 1, 2014.

The ALJ decided at the fourth step that prior to October 1, 2014, Plaintiff had the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could only occasionally lift and carry up to ten pounds and frequently lift and carry up to five pounds. She could no more than occasionally push/pull with her non-dominant left arm. She could no more than occasionally flex or extend her neck or reach overhead. She had to shift position, such as standing up, every fifteen minutes while remaining on-task. The claimant could never balance on uneven surfaces. She required an assistive device to climb stairs or ramps. She could never climb ladders, ropes, or scaffolds. The claimant had no depth perception and could not perform work requiring any visual acuity on the right. She would be absent from work three to four days per month due to pain.

(PageID.57.) Based on testimony of the VE, the ALJ concluded that under the above RFC, Plaintiff could not perform any of her past relevant work, and that there were no other jobs existing in significant numbers in the national economy that Plaintiff could have performed. (PageID.60–61.) Accordingly, the ALJ concluded that Plaintiff was under a disability from her alleged onset date through September 30, 2014. (PageID.61.)

### 2. Plaintiff's Condition Since October 1, 2014.

The ALJ decided that as of October 1, 2014, Plaintiff underwent medical improvement, and that it was related to her ability to work. (PageID.62.) The ALJ found that as of October 1, 2014, Plaintiff then retained the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally lift and carry up to ten pounds and frequently lift and carry up to five pounds. She can no more than occasionally push/pull with her non-dominant left arm. She can no more than occasionally flex or extend her neck or reach overhead. She has to shift position, such as standing up, every fifteen minutes while remaining on-task. The claimant can never balance on uneven surfaces. She requires an assistive device to climb stairs or ramps. She can never climb ladders, ropes, or scaffolds. The claimant has no depth perception and cannot perform work requiring any visual acuity on the right.

(PageID.63.) The ALJ next determined that Plaintiff would still be unable to perform her past relevant work as a secretary. (PageID.65.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations since October 1, 2014. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: parking booth cashier (50,000 national jobs), production inspector (30,000 national jobs), and office helper (70,000 national jobs). (PageID.100–102.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.66.)

Accordingly, the ALJ entered a partially favorable decision, finding Plaintiff was disabled from September 5, 2013, through September 30, 2014, but not thereafter. (PageID.66.)

## DISCUSSION

### 1. The ALJ's Finding of Medical Improvement is Supported by Substantial Evidence.

Plaintiff's claim is construed as a "closed period case," i.e., one in which the ALJ determines that the claimant was disabled for a finite period of time that commenced and ended prior to the date of the ALJ's decision. *See, e.g.*, *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987). The medical improvement standard applies to closed period cases. "Once an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial gainful activity.'" *Niemasz v. Barnhart*, 155 F. App'x 836, 840 (6th Cir. 2005) (quoting 42 U.S.C. § 423(f)(1)); *see also Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir. 1999) (medical improvement standard as defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(I) applies to closed period cases).

"Medical improvement" is defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1) in relevant part as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

*Id.* As the Sixth Circuit has stated, however, no "smoking gun medical documents" from a specific date are required to uphold an ALJ's decision that medical improvement has occurred. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Rather, "the ALJ's determination as to the date on which a claimant's disability ended must simply be 'not so wholly arbitrary so as to carry the ALJ's decision outside the zone of choice that the ALJ possesses in rendering disability

decisions.'" *Bronsink ex rel. Lovely v. Comm'r of Soc. Sec.*, No. 1:10–cv–458, 2011 WL 4579603, at *14 (W.D. Mich. Sept.15, 2011) (quoting *White*, 572 F.3d at 285).

Here the ALJ noted a statement from Dr. Paul Park, Plaintiff's surgeon, dated July 23, 2014. Dr. Park noted that Plaintiff experienced gait instability, left-sided pain, numbness, periodic weakness, muscle spasms, and balance difficulties, and concluded that Plaintiff was "totally and completely disabled during recovery until 9/10/14." (PageID.523.) While such a note might not be enough, standing on its own, to demonstrate a change in Plaintiff's symptoms, signs, and laboratory findings associated with her impairments, the ALJ went on to find that by September of 2014, the objective evidence did not support ongoing disability. (PageID.62.) As the ALJ later discussed, on September 10, 2014, Ms. Nancy Thomas, a nurse practitioner working with Dr. Park, found that despite Plaintiff's complaints, she had a stable gait, and could walk on her toes, heels, and tandem walk without difficulty. She had 5/5 motor strength throughout. (PageID.540.) Ms. Thomas ordered an MRI which found no recurrent disease. There were degenerative intervertebral disc and facet changes noted, but there was no central spinal canal or neural foraminal stenosis. (PageID.537.) The ALJ also referenced an October 8, 2014, treatment note from Dr. Mara Isser-Sax which found that Plaintiff had normal and stable ambulation. (PageID.541.) Muscle testing of the extremities was 5/5 except for a left hip flexion, where strength was 4/5. (PageID.541.) As previously noted, medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1). The Court concludes the ALJ's decision that Plaintiff experienced a medical improvement in her condition is supported by substantial evidence.

Plaintiff relatedly argues that the ALJ erred in finding medical improvement because she failed to give controlling weight to the opinion of Dr. Aaron Mammoser. On September 24, 2014, Dr. Mammoser completed an RFC worksheet that asked for his opinion regarding Plaintiff's

7

limitations. He noted that Plaintiff suffered from daily and continuous pain in her neck and lower back, as well as left sided paresthesia. (PageID.551.) He stated Plaintiff could only sit for a total of one hour in a workday, and stand or walk for less than one hour total. (PageID.552.) Plaintiff would need to shift positions every five to ten minutes. (PageID.553.) She could never lift or carry any weights. (PageID.553.) While Plaintiff could engage in activities such as shopping and banking, and could climb a few stairs, she could not walk even for a block on rough or uneven surfaces, and could not use public transportation. (PageID.553.) Plaintiff could never use her upper extremities for reaching, and could only occasionally use them for grasping, turning, twisting, and performing fine manipulations. (PageID.554.) Were she to work, Dr. Mammoser believed her symptoms would increase, and that she would need to take unscheduled breaks several times per hour. (PageID.554.) Dr. Mammoser concluded by stating that he would expect Plaintiff to miss work more than three times a month. (PageID.555.) On July 20, 2015, Dr. Mammoser reaffirmed these limitations, and further stated that he did not believe Plaintiff would be able to perform full-time competitive work for the foreseeable future. (PageID.556.) Plaintiff claims the ALJ erred in evaluating this opinion.

.   The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Mammoser qualifies as a treating source.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

In considering the period beginning October 1, 2014, the ALJ gave Dr. Mammoser's opinion only little weight. (PageID.64.) The ALJ referenced his previous discussion of the medical record as inconsistent with the doctor's opinion. The Court finds this amounts to good reasons, supported by substantial evidence, for assigning less than controlling weight to the doctor's opinion. For example, as the ALJ noted, Dr. Mammoser's treatment notes from March 2015, found Plaintiff had full strength in her upper and lower extremities. Her extremities were normal in bulk and tone. (PageID.546.) Plaintiff did have decreased sensation on her left side, but had normal and symmetric

9

reflexes. (PageID.546–547.) Her steppage gait on the left side had improved, she was able to walk in tandem without difficulty. (PageID.547.) By May 2015, Plaintiff took a muscle relaxer only as needed, which was "every few weeks or so." (PageID.548.) In her function report Plaintiff reported being able to prepare complete meals, she stated she was able to do a load of laundry a day, and do the dishes, and was very limited in gardening. (PageID.242.) She could go shopping for groceries and clothing for up to one hour. (PageID.243.) She attended church and could watch her children in sporting events. (PageID.244.) The ALJ reasonably found these records and activities to be inconsistent with the severity of the limitations provided by Dr. Mammoser.

Plaintiff claims, however, that even if the ALJ did not violate the treating physician rule, the ALJ should have given the opinion more weight when applying the factors found at 20 CFR §§ 404.1527 and 416.927. (PageID.584–589.) As Plaintiff correctly notes, even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected. Rather, the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96–2p, 1996 WL 374188 at *4 (S.S.A. July 2, 1996)2; *see also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Contrary to Plaintiff's assertion, however, the ALJ did not "ignore" these factors. Here, the record demonstrates that the ALJ recognized her responsibility under the regulations, noting that she had to consider the opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927. (PageID.57.) It is patent that the ALJ explicitly considered several of the factors contained in the regulation, including Dr. Mammoser's role as a treating specialist, and the consistency and

10

supportability of his opinion. (PageID.60, 64.) While the ALJ could have provided a more detailed analysis of the factors, what ultimately matters is whether the ALJ's reasons for discounting a treating source's opinion are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188, at *5). The ALJ has done so here. Accordingly, this claim of error is rejected.

### 2. The ALJ Did Not Play Doctor in Determining Plaintiff's RFC As of October 1, 2014.

Plaintiff next claims that the ALJ substituted her "unqualified assessment of the record for medical opinions by treating experts." (PageID.586.) Noting that there are no medical opinions dated after her medical improvement date other than Dr. Mammoser's opinion, to which the ALJ gave only little weight, Plaintiff argues the ALJ played doctor in developing an RFC that removed Plaintiff's absences from work.

Plaintiff relies on a case from the Eastern District of Michigan that quotes from *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008)), to support her assertion. In *Deskin*, the court stated "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Id.* at 912 (quoting *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass.1998)). *Deskin*, however, has been soundly criticized as "not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010). Indeed, as the Sixth Circuit has noted,

> [T]he Commissioner has final responsibility for determining an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about

11

> whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'

*Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.")

The Court concludes the ALJ acted squarely within her authority in determining Plaintiff's RFC. It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.945; *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'") (quoting 20 CFR § 416.920(a)(4)(iv)). As the ALJ indicated, Dr. Park's and the agency consultant's opinions played a role in developing the RFC. But, as the ALJ noted, Dr. Park did not examine Plaintiff after September 30, 2014, and found that Plaintiff was impaired to a greater extent than that found by the consultant. (PageID.64.) The ALJ also considered Plaintiff's treatment notes, statements to her physicians, and activities of daily living. (PageID.64.) The Court finds no error here.

For all the above reasons, the Court rejects this argument.

### 3. The ALJ's Credibility Assessment is Supported by Substantial Evidence.

At the administrative hearing, Plaintiff testified that she was impaired after September 30, 2014, to an extent much greater than that found by the ALJ. Among other things, she stated that she continued to experience bad days three to four times a month. (PageID.78.) She stated that on those days she had pain in her neck and shoulders that would continue down her back, and that this pain was debilitating. (PageID.79.) She stated she could only sit comfortably for an hour, but that if she were seated at a desk, she could only look down at the desk or what she was

working on for fifteen to twenty minutes before needing to take a break. (PageID.87.) She could only stand for fifteen minutes, and walk for two blocks on even surfaces before needing to rest. (PageID.87.) Plaintiff claims the ALJ erred in failing to adopt her subjective complaints.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff first argues that the ALJ's credibility analysis gave undue weight and mischaracterized her activities of daily living. (PageID.588.) The regulations expressly authorize the ALJ to consider a claimant's daily activities when "[e]valuating the intensity and persistence of . . . symptoms . . . and determining the extent to which . . . symptoms limit [the] capacity for work . . . ." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, an ALJ may discredit a person's testimony when it contradicts the evidence provided, which may include reports of daily living activities. *Walters*, 127 F.3d at 531–32. Here, the ALJ noted that Plaintiff's testimony pertaining to the severity of her symptoms was not credible partially because it was inconsistent with her reported activities of daily living. Because an ALJ may consider a claimant's activities of daily living when making a credibility determination, Plaintiff has not demonstrated that reversal or remand is appropriate on this basis.

Plaintiff claims, however, that the ALJ mischaracterized her activities. She states that while she participated in her daughter's play, it resulted in an increase in her pain. (PageID.588.)

14

But this fact was expressly noted in the ALJ's decision. (PageID.63.) She also claims that while she can go shopping, she testified she cannot carry heavy bags. But she testified she was able to lift and carry a gallon of milk (PageID.84), and in any event has not demonstrated that this allegation is inconsistent with the ALJ's RFC determination that she could only occasionally lift and carry ten pound weights and frequently lift and carry five pound weights. (PageID.63.) She states that she testified she could not do the dishes and laundry without triggering a bad day, but she had also stated that during a typical day she would pick up and straighten the house, as well as pick up clothes and do the dishes. (PageID.241.) Similarly, Plaintiff claims the ALJ impermissibly focused on the normal findings in a March 10, 2015 treatment note without noting that she had decreased sensation on her left side. (PageID.588.) Again, however, this was expressly noted by the ALJ. (PageID.63.) The Court finds that the ALJ's discussion thoroughly and accurately described the record and Plaintiff's activities.

Plaintiff has two remaining credibility arguments. She next claims that the ALJ erred in noting Dr. Mammoser found her clinically and radiologically stable in March 2015, noting that the fact she was stable says nothing about the severity of her condition. (PageID.63, 589.) It is not clear that the ALJ used this fact to discount Plaintiff's credibility, but even assuming Plaintiff is correct, this amounts to, at most, harmless error. The ALJ provided numerous other reasons, discussed above, for discounting her credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal").

Finally, Plaintiff argues that her work history should support the credibility of her allegations. (PageID.589.) Plaintiff's reliance on *Felisky v. Bowen*, 35 F.3d 1027, 1036–41 (6th

15

Cir.1994) is misplaced. While the court in that case noted the claimant's work history as one of the factors supporting her credibility, *see id.* at 1041, it did not adopt a presumption of credibility based on that factor. "The Sixth Circuit has never held that a social security benefits claimant is entitled to a 'presumption of credibility.' It is the ALJ's function to determine credibility issues, and the claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination." *Barney v. Comm'r of Soc. Sec.*, No. 1:08–cv–1225, 2010 WL 1027877, at *4 (W.D. Mich. Jan.20, 2010) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); 20 C.F.R. § 404.1529)), *report and recommendation adopted*, 2010 WL 1027867 (W.D. Mich. Mar.18, 2010).

The ALJ considered the evidence of record and the extent to which the symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," such as Plaintiff's work history. (PageID.57) (citing 20 C.F.R. §§ 404.1529, 416.929)). It is patent the ALJ was aware of Plaintiff's past work as a secretary. (PageID.65.) Credibility determinations fall within the province of the ALJ. *See, e.g.*, *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 508 (6th Cir. 2014). As noted above, there is substantial evidence supporting the ALJ's credibility determination, despite Plaintiff's work history.

For all the above reasons, this claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated:  November 17, 2016                        /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE